```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS
```

UNITED STATES of AMERICA,

    v.                                             Case 1:21-cr-10350-1 LTS

HARRY TAM,
    Defendant.


       MOTION FOR DEPARTURE FROM METH ACTUAL GUIDELINE

                         Preliminary

Defendant, Harry Tam, by his counsel, Kevin L. Barron, Esq., respectfully moves the Honorable Court, over government opposition, for a downward departure or variance from the "meth actual" Guideline's Base Offense Level of 36 to BOL 32. This motion follows on defendant's objection to the PSR's erroneous attribution of an additional 7.6 kilograms[1] of methamphetamine raising the base offense level from 36 to 38. Section "4.", defendant's December 15, 2023 Objections to PSR. Defendant should be held responsible for 3,669 grams of methamphetamine *substance* at a base offense level of 32.[2]  USSG §2D1.1(a)(5) & (c)(4).

---

[1] The PSR erroneously converts $95,000.00 cash seized at the Tam household to methamphetamine actual and wrongly attributes a pound of methamphetamine belonging to co-defendant Vuong to Tam; this raises Tam's drug weight from 3.7 to 11.3 kilograms. PSR ¶¶24, 29 & 33. See objection "4." of defendant's December 15, 2023 Objections to PSR. Discussed, *infra*, pp. 2 - 3.

[2] This is the first of defendant's requests for variance from the PSR's mechanistic determination of an eye-popping, excessive 360-life Guidelines sentence at TOL 41/CHC VI. Defendant also seeks variance, among other

This motion borrows freely from James Sultan, Esq.'s August 9, 2023 "Motion Requesting the Court to Declare a Categorical Policy Disagreement with the Purity-Driven Methamphetamine Guidelines" in *United States v. Bodie*, Case 1:23-cr-10031-IT. Docs. 90 & 91.

## FACTS

On July 6, 2023, Harry Tam pled guilty to one count of conspiracy to distribute methamphetamine, distribution of methamphetamine, one count of felon in possession and one count of possession of a firearm with an obliterated serial number. The tested seizures of methamphetamine in this case were nearly pure. The November 8, 2023 PSR applies the meth actual Guideline of §2D1.1(c)(6) to Mr. Tam. There is no indication in this case that Tam or any other defendant diluted (or added "cut" to) any of the methamphetamine in this case; that is, the methamphetamine was received and used by defendants or redistributed at the same level of purity.

---

grounds, from: attribution of 9 points (and Career Offender) to an offense cluster under a single, concurrent disposition and the general overstatement of defendant's criminal history; the PSR's failure to provide reasonable incremental sentences, jumping from a previous longest sentence served of 39 months to 360+; a leader-organizer "enhancement" in an unstructured conspiracy of user-dealers (see, also objection to PSR "3."); and an unwarranted disparity in sentences among co-defendants; and on other grounds. Defendant will further request variances on §3553(a) grounds of: extraordinary recovery efforts in restorative justice; expert psychiatric opinion of good prospects for recovery from substance use disorders; use of alternative supervised release sentence in lieu of incarceration for substance abuse disorder.

There is a dispute in this case over the correct attributable drug weight; it should be explained to place the calculations of this memorandum in context.  The correct weight of is 3.7 kilograms and it should produce a base offense level of 32 for methamphetamine *substance* (it would be 36 for "meth actual").  Probation's November 8, 2023 PSR, however, found base offense level 38 by the attribution of 11.32 kilograms of methamphetamine actual, an error of nearly eight kilograms in substance weight.  The 11.32 kilos erroneously includes conversion of $95,000.00 cash into 7.2 kilograms of methamphetamine actual (not substance) and the attribution of two bags of methamphetamine actual belonging to Mia Johnson, the girlfriend of co-defendant Duong, weighing 458 grams (112.8 grams and 344.97 grams).

Probation merely assumes that any cash seized must be drug proceeds, an assumption inconsistent with verifiable information.  As his tax returns will show, Harry Tam earned legitimate six-figure employment income from his position as the chief mechanic and manager of the Brookline Midas auto repair shop.  More importantly, Tam's mother gave $30,000.00 and his wife's mother gave $40,000.00 for the births of the couple's two children.  Available information in discovery also disproves the assertion that a half kilogram of methamphetamine seized in the arrest of co-defendant Vuong by Boston Police on September 9,

3

2020 was attributable to Tam.  In recorded October 2020 jail calls, Vuong and Tam discuss Vuong telling BPD that Mia Johnson's methamphetamine was Vuong's.  Johnson had her own sources of supply and was not indicted in this conspiracy.

## ARGUMENT:
## THE COURT SHOULD
## REJECT THE PURITY "ENHANCEMENT"

A.   <u>Meth Actual Guideline Is Bad Policy</u>

Defendant Tam asks this Court to reject the meth actual disparity contained in the drug table of USSG §2D1.1(c) and to join a growing number of district courts throughout the United States finding policy disagreement with the methamphetamine Guidelines' 10:1 purity ratio.

There is good cause to grant this motion.  First, there is no empirical basis for the 10:1 ratio of methamphetamine substance to "actual" methamphetamine.  Second, purity has no relevance to defendant's role in the offense and does not indicate closeness to the source; nearly all methamphetamine sold in the United States exceeds 90 percent purity.  Third, the application of a far higher base offense level is arbitrary because it depends on whether government chooses to test the seized drugs for purity and thus creates a sentencing disparity with other hard drugs like fentanyl.

4

This Court's authority to vary from a Guideline on policy grounds and grant the relief requested is settled law.  District courts may vary from a Guideline on policy grounds.  See, *Kimbrough v. United States,* 552 U.S. 85, 105-107 (2007).  A sentencing court may reject a Guideline on a categorical basis and "not simply based on an individualized determination that [it] yield[s] an excessive sentence in a particular case." *Spears v. United States,* 555 U.S. 261, 264 (2009)(*per curiam*). *See also, United States v. Stone,* 575 F.3d 83, 89 (1st Cir. 2009)(reaffirming district court's authority to vary from Guideline on a categorical policy disagreement; procedural error if court fails to recognize discretion to vary from Guideline range based on a categorical policy disagreement).

B.   §2D1.1(c) Contains a 10:1 Ration for Pure Methamphetamine

The Meth Actual or Purity "Enhancement" is imposed by operation of §2D1.1.  Note (B) to the Drug Quantity Table at USSG §2D1.1(c) directs the Court to use the offense level determined by the entire weight of the methamphetamine mixture or the offense level determined by the weight of actual methamphetamine or "ice", whichever is greater.  Note (C) to the Drug Quantity table defines "ice" as a mixture containing methamphetamine of at least 80% purity.  The table establishes a 10:1 ratio in its treatment of quantities of methamphetamine

mixtures on one hand and actual methamphetamine or "ice" on the other.

C.  There is No Empirical Basis for the 10:1 Ratio

The Supreme Court concluded long ago that the Sentencing Commission departed from an empirical approach in setting the guidelines ranges for drug offenses in 1989, choosing instead to key the guidelines to the statutory minimum sentences that Congress had established for such crimes in 1988.  *See, e.g., Gall v. United States,* 552 U.S. 38, 46 n.2 (2007); *Kimbrough v. United States,* 552 U.S. 85, 96 (2007).  As Judge McCafferty observed in *Bean* "Many courts have noted that no empirical data appears to justify the Guidelines' 10:1 ratio." *United States v. Bean*, 371 F. Supp. 3d 46, 51 & n. 3 (D.N.H. 2019) (collecting cases).  *See also United States v. Ferguson,* 2018 WL 3682509 (D.MN.) (8/2/18) at *3; *United States v. Hartle*, 2017 WL 2608221 (D.ID.)(2/15/17) at *2 ("I have tried to determine whether there is any empirical data from the Sentencing Commission or in the academic literature which would justify the [10:1] ratio.  I have found none".).

D.  The Purity of Methamphetamine No Longer Serves as an Indicator of a Defendant's Role in the Drug Distribution Chain or Proximity to the Drug Supply

The guideline's stated rational for applying drastically increased punishments has collapsed in an era where nearly all methamphetamine is sold and consumed in a pure state.  Comment

6

27(C) to USSG §2D1.1 advances the no-longer-valid rationale that the purity of a controlled substance "may be relevant in the sentencing process because it is probative of the defendant's role and position in the chain of distribution.  Since seized controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of drugs."

Today, however, this premise is false.  "Today, methamphetamine is almost always imported from foreign drug labs and the purity levels are much higher." *Hartle,* 2017 WL2608221 at *2.  According to the DEA, the average purity of methamphetamine in the United States between 2012 and 2017 was over 90%.  *Bean,* 371 F. Supp. 3d 943, 952 (N.D. IA. 2018).  As one district court put it earlier this year: "The fact is – and there doesn't seem to be much disagreement on this point – that nearly all of the methamphetamine that's actually tested in relation to federal drug crimes is highly pure." *United States v. Harvel,* 2023 WL 1930686 (D. NE.) (2/10/23) at *5.  Thus, "the Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality." *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1255 (D. NM. 2017).  As Judge McCafferty put it in *Bean*:

7

"In effect, the purity-based methamphetamine guidelines are treating all defendants as kingpins, even though that is not necessarily true."  371 F. Supp. 3d at 53.

E.  Purity-Driven Methamphetamine Guideline Unduly Harsh Compared To Other Drug Offenses

The §2D1.1(c) drug table's 10:1 ratio for meth actual now applies to nearly every methamphetamine case and creates a gross disparity in recommended sentences for meth actual in comparison to other hard drugs.  "Methamphetamine offenses receive more severe sentences than any other drug." *Bean,* 371 F.Supp. 3d at 53.  In this case, for example, 3.7 kilograms of actual methamphetamine (the quantity correctly attributable to Tam) triggers a BOL of 36.  Yet, the drug table would apply BOL 32 to the same quantity of fentanyl, heroin or PCP. §2D1.1(c)(4).  (Notably, the drug table applies a BOL of 26 to the same amount of cocaine.  *Id.* at (c)(6).)  A comparison of resulting GSR's place this disparity in stark relief.  A defendant at CHC III held responsible for 3.7 kilos of pure fentanyl without other adjustments to TOL faces a GSR of 151 to 188 months.  The same defendant held responsible for the same quantity of meth actual faces a GSR of 235 to 293 months, a sentence anywhere from 84 to 105 months longer.

8

F.  District Courts Throughout the United States Find Policy Disagreement with the Meth Actual Guideline

At least 14 district courts throughout the United States have found categorical policy disagreement with the purity-driven methamphetamine guidelines during in the past six years. *United States v. Celestin*, 2023 WL 2018004 (E.D.LA.) (2/15/23); *United States v. Havel,* 2023 WL 1930686 (D. NE.)(2/10/23); *United States v. Robinson,* 2022 WL 17904534 (S.D. MI.)(12/23/22); *United States v. Carrillo,* 440 F. Supp. 3d 1148, 1157 (E.D. CA. 2020); *United States v. Moreno,* 583 F. Supp. 3d. 739, 741 (W.D. VA 2019); *United States v. Rodriguez,* 382 F. Supp. 3d 892, 893 (D. AK. 2019); *United States v. Johnson*, 379 F. Supp. 3d 1213, 1225 (M.D. AL 2019); *United States v. Bean,* 371 F. Supp. 3d 46 (D. N.H. 2019); *United States v. Pereda,* 2019 WL 463027 (D. CO.)(2/16/19); *United States v. Nawanna*, 321 F. Supp 3d 943 (N.D. IA. 2018); *United States v. Harry,* 313 F. Supp. 3d 969, 971-974 (N.D. IA 2018); *United States v. Ferguson*, 2018 WL 3682509 (D. MN.)(8/2/18); *United States v. Saldana,* (No. 17CR271-1 W.D. MI.)(7/3/18); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1255-257 (D. N.M. 2017).  In this District, Judge Casper took the same position in the context of sentencing the defendant in *United States v. Peter Lobo*, Case. 1:17-cr-10063 DJC.

9

All of these courts employed similar reasoning and legal analysis to reach the same conclusion – that the current methamphetamine guidelines should be rejected on policy grounds and an appropriate variance should be adopted and applied in sentencing all defendants convicted of methamphetamine offenses. As Judge McCafferty put it, this is "a policy-based variance that is wholly independent of the individual defendant's unique circumstances and characteristics." 371 F. Supp. 3d at 55.

## CONCLUSION

For the reasons set forth above, this motion should be granted.

Dated: February 7, 2024

Respectfully submitted,
Harry Tam, defendant,
By his counsel,
/s/Kevin L. Barron
Kevin L. Barron, Esq.
P.O. Box 290533
Charlestown, MA 02129
(617) 407-6837

## Certificate of Service

Counsel certifies that he has caused a true copy of this motion to be served today on the attorneys for all the parties through the CM/ECF system of this District as set forth in the Notice of Electronic Filing and that no party requires service by other means.

/s/Kevin L. Barron