UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) ) ) |
| v. | ) )  No. 21-cr-10350-LTS-1 |
| HARRY TAM | ) ) ) |

ORDER ON MOTIONS RELATED TO FORFEITURE OF LEXUS

December 12, 2025

SOROKIN, J.

Three requests are before the Court concerning the Preliminary Order of Forfeiture it entered against a 2020 Lexus RX450H at the time of Harry Tam's sentencing. Doc. No. 644.[1] The first is a third-party claim to the Lexus filed by Tam's partner, Jade Chin. Doc. No. 660. The second is the government's motion for summary judgment in the ancillary forfeiture proceeding initiated by Chin's claim. Doc. No. 799. The third is a request by Tam to vacate the Preliminary Order of Forfeiture based on his own interest in the Lexus. Doc. No. 804.[2] As explained below, Tam's motion is DENIED, the government's motion is ALLOWED, and Chin's claim is DISMISSED.

I. UNDISPUTED FACTS[3]

Chin and Tam are not married but have been in a long-term (if sometimes rocky) relationship since at least 2016, and they share two children. See Doc. No. 809-5 ¶¶ 18, 20, 23;

---

[1] Citations to "Doc. No. __" refer to documents appearing on the court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or to paragraph numbering within the cited document.

[2] In a previous Order, the Court denied various other requests contained in the same submission by Tam, leaving unresolved only Tam's assertion of his interest in the Lexus. See Doc. No. 806 at 1–4.

[3] The Court recounts the undisputed facts as reflected in the government's statement of facts to which Chin appended her responses, Doc. No. 809-5, supplemented by the record of relevant

cf. id. ¶¶ 21–22 (describing restraining orders Chin obtained against Tam). When the couple's second child was born in June 2020, they were "pretty much separated." Id. ¶ 23. Tam's involvement with drugs was a source of conflict between them. Id. Chin began to suspect Tam was selling drugs in 2020, and she knew he used drugs long before that. Id. ¶¶ 20, 23.

Chin's suspicions proved correct. Tam was a leading participant in a drug-trafficking conspiracy involving the shipment of large quantities of methamphetamine from California to a Midas shop in Massachusetts where Tam worked. Id. ¶¶ 2–5. The conspiracy operated from at least March 2020 to May 2021, and Tam "earn[ed] large amounts of drug proceeds in the form of cash from" methamphetamine sales during that time period.[4] Id. ¶¶ 3, 5. For example, during a three-month period from August to November 2020, an investigator estimates that Tam "netted approximately $261,600" from the drug-trafficking operation, which the investigator believes "likely underestimates" Tam's net proceeds in that period alone. Id. ¶¶ 15–16.

Tam and Chin purchased the Lexus presently at issue on July 6, 2020—after the birth of their son, and during the period of the drug-trafficking to which Tam pleaded guilty in this case. Id. ¶ 24. The purchase contract for the Lexus bears both Tam's and Chin's names, as does the title to the vehicle. Id. ¶¶ 29–30. They both had keys. Id. ¶ 54.

The total purchase price for the Lexus exceeded $61,000. Id. ¶ 25. It was paid using a combination of the following: a $3,000 rebate from the dealer; a $2,500 trade-in allowance for Chin's 2008 Honda Element; a $19,488 cashier's check in Tam's name from a Bank of America account held by Tam; a $708.62 charge on Tam's credit card, later paid from Tam's Bank of

---

events in the underlying criminal case. The facts that are material to resolving the legal issues now pending are not genuinely in dispute.
[4] Though no drugs were seized before the summer of 2020, records collected by investigators suggested shipments consistent with the trafficking operation began arriving at the Midas shop as early as April 2019. Doc. No. 809-5 ¶ 17.

America account; and $35,900 in cash.[5]  Id. ¶¶ 26–28, 33–38.  Tam's Bank of America account received deposits from his employer (Midas), state and federal tax refunds, state unemployment payments, as well as substantial cash deposits and peer-to-peer transfers.  Id. ¶ 39.  Investigators concluded that most of the cash and peer-to-peer transactions, which together exceeded $90,000 in the two-and-a-half years before the purchase of the Lexus, "were derived from proceeds from the illegal sale of drugs."[6]  Id. ¶¶ 39–40.  In other words, Tam commingled in his bank account his legitimate earnings with at least some of the proceeds of his drug-trafficking activity.  Neither Tam nor Chin outright disputes that fact.  The cash used to purchase the Lexus consisted of eighty $100 bills, with the remaining $27,900 made up of smaller denominations.  Id. ¶ 42.

Though Tam occasionally drove the Lexus, Chin did so more often.  See id. ¶¶ 55–56 (stating Tam could drive it "when he wanted" and "would drive [it] when Chin would kick him out of the house," but that he did so "rarely" and "would not take it for very long," as he more often used other cars he owned).  During a recorded video call to Chin from prison after his arrest, Tam described the Lexus as a "gift" to her "for having [his] babies" (an implicit acknowledgment that he had supplied nearly all of the purchase money) and advised her to emphasize that he used the car infrequently.  Id. ¶¶ 31, 57.

---

[5] According to Chin and Tam, Chin was an authorized user of Tam's Bank of America account and his credit card.  See Doc. No. 809 at 3 (citing Doc. No. 802-1 at 27); Doc. No. 814 at 4.  Neither, however, has supplied any documents evidencing this fact generally, identifying when she became such a user, or reflecting whether and how often she used either account.  In any case, an authorized user or "co-signer" on a bank or credit account generally "does not have an actual ownership interest" in the account, nor is she liable for debt accrued on the account, under Massachusetts law.  United States v. U.S. Currency, $81,000, 189 F.3d 28, 33 (1st Cir. 1999).

[6] Though Chin claims to dispute this characterization, which is supported by a sworn affidavit from an experienced law-enforcement officer involved in the investigation of Tam's drug-trafficking operation, she supplies no evidence to rebut it.  See Doc. No. 809-5 ¶ 40.  Absent such evidence, she has not created a genuine dispute as to this fact.

3

Tam was indicted with the drug-trafficking conspiracy charged in this case in December 2021, Doc. No. 1, and he entered a guilty plea in July 2023, Doc. No. 401. Before sentencing, the government moved for a preliminary order forfeiting Tam's interest in the Lexus. Doc. No. 624. Tam (through counsel with whom Tam was satisfied, per under-oath statements he made in his plea colloquy) filed a written response to that motion in which he objected to the forfeiture of cash seized during a search of his home but advanced no argument regarding the Lexus. Doc. No. 625. In urging that the cash was not "criminal proceeds and was not connected with the offense," Tam provided exhibits to establish "that the cash comes from legitimate sources." Id. at 1. One of those exhibits was a handwritten statement by his mother describing a $30,000 cash gift she made to Tam "and his family" in October 2018 around the time their first child was born, followed by another $10,000 gift when Chin was expecting their second child. See id.; Doc. No. 632-1 at 1 (describing first sum as having been taken from 401K and second sum as having come from bank account). In this filing, then, Tam tied his mother's gifts to the cash investigators found in his home—not to the funds used to purchase the Lexus.[7]

At Tam's April 2024 sentencing, the Court entered the Preliminary Order of Forfeiture the government had requested. Doc. No. 644. In it, the Court found that the government had "established the requisite nexus between the [Lexus] and the offenses to which [Tam] pled guilty," and that therefore Tam's interest in the Lexus was "forfeited to the United States of America for disposition pursuant to 21 U.S.C. § 853." Id. at 3–4.

About a month after Tam was sentenced, Chin filed a letter the Court construed as a third-party claim to both the cash and the Lexus. Doc. No. 660. She asserted that both the cash

---

[7] This argument was beside the point at the time, as the government had already completed its administrative forfeiture of the cash and was seeking judicial forfeiture only as to the Lexus. See Doc. Nos. 729, 750.

4

and the Lexus were "rightfully" hers, that neither represented "criminal proceeds," and that neither was "used in connection with any crime." Doc. No. 660 at 1. The statement she attached to the letter primarily described various non-criminal sources of funds available to her family. Id. at 2–3. At the government's request, the Court dismissed Chin's claim as far as the cash was concerned, because it was not the subject of any forfeiture order by this Court. See Doc. Nos. 682, 683, 729. Discovery followed only on Chin's claim to the Lexus. See Doc. No. 730.

When she was deposed, Chin testified that the cash used to pay for the Lexus had come from savings she and Tam kept in their home, including a $30,000 gift from Tam's mother in 2018 or 2019 intended to assist the couple with family expenses. Doc. No. 809-5 ¶¶ 45, 50. In support, she submitted the same handwritten statement from Tam's mother that had been filed along with Tam's objection to the forfeiture of the cash. Doc. No. 809-4. According to Chin, she and Tam generally saved cash in their home in the form of $100 bills, with any smaller denominations they received being "traded in for 100s." Doc. No. 802-1 at 23. Her account of their practice is generally consistent with investigators' description of the denominations of cash seized during the search of Tam's home. See Doc. No. 684-30 at 2 (stating the $95,450 recovered was made up of exclusively $100s and $50s). As noted earlier, though, most of the cash used to purchase the Lexus was in smaller denominations.

After discovery on Chin's claim was complete, the government moved for summary judgment. Doc. No. 799. Two weeks later, Tam wrote to the Court raising various issues, one of which remains unresolved and concerns the Lexus—he asked the Court to vacate its Preliminary Order of Forfeiture. See Doc. No. 804. As to that request, the Court set a new deadline for Chin's opposition to summary judgment and invited the government to address Tam's interest in the Lexus in its reply brief. Doc. No. 806 at 2–3, 7–8. Chin filed her opposition papers as

directed. Doc. No. 809. The government replied, Doc. No. 813, and Tam responded to the government's reply, Doc. No. 814. The matter is now ripe for resolution on the papers.

## II. LEGAL STANDARD

Under 21 U.S.C. § 853(a), any person convicted of a serious federal drug-trafficking offense "shall forfeit to the United States . . . any property . . . derived from . . . proceeds the person obtained . . . as the result of" the offense and "any of the person's property used . . . to facilitate the commission of" the offense. "All right, title, and interest in" such property "vests in the United States upon the commission of the act giving rise to forfeiture." § 853(c). If someone "other than the defendant" claims to have "a legal interest in property which has been ordered forfeited to the United States," that person may "petition the court for a hearing to adjudicate the validity of [her] alleged interest in the property." § 853(n)(2).

A petition seeking such a hearing must be "signed by the petitioner under penalty of perjury" and must "set forth the nature and extent of the petitioner's right, title, or interest in the property," along with "any additional facts supporting the petitioner's claim." § 853(n)(3). A third-party petitioner bears the burden in such proceedings of proving "by a preponderance of the evidence that" she "has a legal right, title, or interest in the property" that "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time" the relevant criminal acts were committed. § 853(n)(6)(A). Alternatively, a petitioner could establish she was "a bona fide purchaser for value" of the property who was "reasonably without cause to believe that the property was subject to forfeiture." § 853(n)(6)(B).

After discovery in an ancillary proceeding such as this one, summary judgment may follow, governed by the familiar standard. See Fed. R. Crim. P. 32.2(c) (allowing dispositive motions governed by the Federal Rules of Civil Procedure). Thus, the government is entitled to summary judgment if "there is no genuine dispute as to any material fact" and the record, with

6

any reasonable inferences drawn in Chin's favor, establishes that the third-party claim fails "as a matter of law." Fed. R. Civ. P. 56(a); see Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006) (citing need to "construe the evidence in the light most flattering to the nonmovants . . . and indulge all reasonable inferences in their favor," but noting that to avoid summary judgment nonmovant must "demonstrat[e], through submissions of evidentiary quality, that a trialworthy issue persists"). As the party who ultimately bears the burden of proof in this ancillary proceeding, Chin "must point to specific facts sufficient to deflect the swing of the summary judgment scythe." Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) (citation modified).

A "preliminary forfeiture order becomes final as to the defendant" at his sentencing. Fed. R. Crim. P. 32.2(b)(4)(A). The forfeiture must be acknowledged by the court at the sentencing and included in the judgment entered thereafter. Fed. R. Crim. P. 32.2(b)(4)(B). If a defendant wishes to challenge a final order of forfeiture included in his judgment, he must do so by filing a timely appeal. Fed. R. Crim. P. 32.2(b)(4)(C); cf. United States v. Zorrilla-Echevarria, 671 F.3d 1, 7 (1st Cir. 2011) (describing "appeal from the judgment imposing the sentence" as "the appropriate vehicle" for defendant's challenge to forfeiture order).

III. DISCUSSION

As the Court will explain, neither Tam nor Chin has a legally viable challenge to the forfeiture under the foregoing standards. Tam cannot justify his failure to challenge forfeiture earlier, via a timely appeal of his conviction and sentence, nor does he meaningfully engage with the evidence supporting the Court's finding of the requisite nexus between the vehicle and his crimes. For her part, Chin cannot in this context challenge the Court's nexus finding, nor has she identified a genuine dispute about any fact material to assessing her legal interest in the Lexus.

7

A.  Tam's Challenge

In a letter sent almost a year after his judgment of sentence entered, Tam expressed a desire to "appeal the Court's order to forfeit the Lexus." Doc. No. 804 at 1. He claims not to have known about the forfeiture of the Lexus until January of this year, accuses the lawyer who represented him at sentencing of ineffectiveness, and asserts that the Court ordered the Lexus forfeited for reasons "unknown" to him. Id. at 2–3, 7. After the government addressed his request in its reply brief, Tam responded in a submission that primarily asks the Court to "do the just and graceful thing by approving" Chin's third-party claim "to the Lexus." Doc. No. 814 at 9. He alternatively asks the Court to vacate its forfeiture order "so he may exercise his right to stake his claim and argue the government's many misrepresentations." Id.

Tam's motion to vacate the Preliminary Order of Forfeiture (Doc. No. 804) is DENIED for several reasons. First, taken together, his submissions advance only Chin's claim to the Lexus. They do not meaningfully develop any claim or objection by Tam on his own behalf. Tam cannot represent or advocate for Chin, whose third-party claim the Court addresses below, and the Court cannot evaluate claims or objections not developed in Tam's papers.

Second, to the extent Tam articulates his own challenge to the forfeiture, he has done so too late and in the wrong forum. He had notice of the government's intent to seek the Lexus's forfeiture in advance of his sentencing, Doc. No. 624, and of the facts upon which the government premised its forfeiture request, see Doc. No. 624-2 ¶¶ 8–12 (describing January 2021 incident in which state law-enforcement officers observed Tam driving Lexus to collect money he was owed for prior drug delivery).[8] His lawyer promptly opposed the government's

---

[8] Tam apparently had a female passenger in the Lexus with him on this occasion, who also accompanied him into the building where he collected the proceeds. Doc. No. 624-2 ¶ 10. The government has neither described the passenger nor argued it was Chin.

motion, Doc. No. 625, and filed exhibits supporting his opposition memorandum that included written statements from Chin, Chin's mother, and Tam's mother, Doc. No. 632. At Tam's sentencing, the Court allowed the motion, Doc. No. 642, entered the Preliminary Order of Forfeiture, Doc. No. 644, and included a forfeiture order in the text of Tam's Judgment, Doc. No. 645 at 8. Thus, the Court's Preliminary Order of Forfeiture became final, as far as Tam's interest in the Lexus is concerned, when he was sentenced. Fed. R. Crim. P. 32.2(b)(4)(A). He was therefore required to pursue any challenge to that order by filing a timely appeal to the First Circuit, not via a letter to this Court a year later.[9] See Fed. R. Crim. P. 32.2(b)(4)(C); Zorrilla-Echevarria, 671 F.3d at 7.

Finally, the Court has considered the arguments Tam advances in his letters, and none of them would warrant vacating the forfeiture order, even if such a request were properly and timely presented here. Tam elides the fact that his sentencing lawyer did litigate a forfeiture-related challenge on his behalf, and he wrongly implies that the same lawyer was obligated to respond to the government's motion challenging Chin's third-party claim (he wasn't). See Doc. No. 814 at 1–2. In direct conflict with the evidence the Court received and credited in ordering the forfeiture, and in an argument that misrepresents the criminal conduct to which he pled guilty, Tam suggests the record "does not support the theory that [he] used the Lexus for any criminal activity as it pertains to the conspiracy" charged in this case which merely arose from him "using drugs and 'going on binges.'" Id. at 4. The Court rejects this characterization. The record speaks for itself.[10] In the remainder of his submissions, Tam faults the government for

---

[9] Tam's suggestion that he knew nothing of the Lexus's forfeiture until January of this year is dubious, given Chin's submission of a third-party claim to the Lexus in May of last year.
[10] Whereas the civil forfeiture statute requires a "substantial connection" between property and criminal activity, § 853 includes no such language. See United States v. George, 761 F.3d 42, 60–61 (1st Cir. 2014) (declining to resolve whether such a requirement should be read into

9

failing to prove that the money used to buy the Lexus could not have come from Tam's other (lawful) sources of income. See id. at 2–8. The government is under no such obligation, particularly where it has established the vehicle was used to facilitate the underlying offense. See 21 U.S.C. § 853(a)(2), (c); cf. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1158–60 (2d Cir. 1986) (discussing accounting choices available to government when dealing with funds in, or property purchased using, bank account containing commingled funds).

Accordingly, Tam's motion to vacate the forfeiture order is DENIED.

B.  Chin's Claim

To prevail on her third-party claim, Chin would need to clear a series of hurdles the government has identified in its papers. Each hurdle presents a serious obstacle on its own, and the Court concludes that surmounting them all poses an impossible challenge in light of the undisputed facts.

First, a third party seeking to modify a forfeiture order "shall set forth [in the petition] the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and] any additional facts supporting the petitioner's claim." § 853(n)(3); cf. United States v. Davis, 137 F.4th 349, 352 (5th Cir. 2025) (noting statute governing third-party petition is "strictly construed" and "noncompliance" with its "requirements is fatal to the petition" (citation modified)). Chin's letter initiating her third-party claim now before the Court stated she was "the owner of the Lexus," which she said did not "represent criminal proceeds and w[as] not used in connection with any crime." Doc. No. 660 at 1. It was accompanied by a two-page declaration by Chin that had been submitted in advance of Tam's sentencing and does not

---

criminal forfeiture statutes but affirming order forfeiting Lexus in which a single "pivotal" meeting in course of money-laundering operation occurred).

reference the Lexus, id. at 2–3, and various other documents related to Chin's administrative claim to the currency seized in Tam's house (which also do not reference the Lexus), Doc. No. 660-1.

Measured against the requirements of § 853(n)(3), these submissions are woefully insufficient. They do not describe—in any detail, or accurately—"the nature and extent" of Chin's interest in the Lexus. Compare Doc. No. 660-1 ("I am the owner of the Lexus . . . ."), with Doc. No. 809-5 ¶ 30 ("The title to the Lexus lists Chin and Tam as owners.") (emphasis added). They do not describe—at all—"the time and circumstances" of her acquisition of ownership. And, they include no "additional facts" supporting her claim to the Lexus (as opposed to the seized cash), such as details about her own use of Tam's credit card and accounts around the time of the purchase or any agreement between her and Tam defining their respective interests in the Lexus. These deficiencies alone merit dismissal of Chin's claim.

Second, Chin's papers take aim mainly at the Court's previous finding that the government had proved the requisite link between the Lexus and Tam's offenses. See Doc. No. 660 at 1 (asserting the Lexus was "not used in connection with any crime"); Doc. No. 809 at 3 (claiming only "legitimate funds" were "used to purchase the Lexus"). These arguments fail factually and legally. Like Tam, Chin does not engage with a key fact upon which the government relied in showing, and the Court relied in finding, the nexus—evidence that Tam was seen driving the Lexus in January 2021 to collect proceeds derived from the charged drug-trafficking. See Doc. No. 624-2 ¶¶ 8–12. Nor does she supply evidence that would rebut the investigator's assessment of the sources of funds in Tam's commingled bank account. Moreover, a proceeding concerning a third-party claim is not on opportunity for "relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a

legal interest in the forfeited property." Fed. R. Crim. P. 32.2 advisory committee's notes to 2000 adoption; see also 21 U.S.C. § 853(k), (n) (limiting third-party claims to evaluating "the validity of [claimant's] alleged interest in the property"); Doc. No. 800 at 9 n.6 (collecting cases from six Courts of Appeals holding third parties cannot challenge finding of forfeitability); cf. United States v. Catala, 870 F.3d 6, 9 (1st Cir. 2017) (describing third-party petition as seeking "a hearing to evaluate [that party's] interest in the property"). Thus, Chin cannot now dispute the Court's determinations that the Lexus was both purchased with proceeds of Tam's crimes and used in the commission of them.

Third, the undisputed facts cannot support a claim that, before the government's interest in the Lexus vested, Chin had "acquired (and has since maintained) a vested interest in the property superior to any interest of" Tam. United States v. Valentin-Acevedo, 625 F. App'x 16, 17 (1st Cir. 2015) (citing § 853(n)(6)(A)). To support such a claim, Chin would need evidence from which the Court could find that her interest in the Lexus was "superior to" Tam's before the circumstances justifying forfeiture arose. She has none. Even if there were a basis to disregard the Court's finding that the Lexus was bought with proceeds from Tam's crimes (and there is not),[11] the undisputed facts establish as a matter of law that Chin's interest in the Lexus was at no time superior—legally—to Tam's. At best, they each contributed something toward the purchase (with the undisputed facts establishing that Tam supplied the lion's share of the funds), and both of their names were on the title. No matter how much Chin drove the Lexus or how infrequently Tam used it, the two owned the car as tenants in common under Massachusetts law.

---

[11] As the government explains, this finding means its interest in the Lexus vested at the moment of purchase. See Doc. No. 800 at 10–15 (invoking "relation back" doctrine and citing cases rejecting third-party claims based on mere suggestions that property could have been purchased with lawful income).

Cf. Lyman v. Lanser, 231 N.E.3d 358, (Mass. App. Ct. 2024) (stating personal property "may be owned by a tenancy in common," including by persons who contributed to purchase price); Tucci v. DiGregorio, 265 N.E.2d 570, 572–73 & n.1 (Mass. 1970) (noting property titled in two persons' names creates tenancy in common with each owner having right "to the possession and use of the entire property"). Chin's interest in the vehicle was, at most, the same as Tam's—and, more likely in light of their relative contributions to the purchase price, proportionally much less than his. She cannot, therefore, succeed on her third-party claim via § 853(n)(6)(A).

Finally, the undisputed facts do not support Chin's claim on the alternative theory that she was "a bona fide purchaser without cause to believe that" the Lexus "was subject to forfeiture." Valentin-Acevedo, 625 F. App'x at 18 (citing § 853(n)(6)(B)). Here, Chin faces two problems. For one thing, Chin neither bought nor owned the Lexus entirely, on her own. The evidence the Court credited in entering the Preliminary Order of Forfeiture and the undisputed facts establish that Tam supplied nearly all of the money used for the purchase (and that the money was drug-trafficking proceeds). See Banco Cafetero, 797 F.2d at 1158–60 (affording government discretion to determine appropriate manner of sorting through commingled funds). Though Chin contributed a fraction of the funds via the trade-in of her previous car, the undisputed facts show that her interest in the Lexus beyond that was essentially gifted to her by Tam. Doc. No. 809-5 ¶¶ 32–39. The recipient of gifted property is not a "bona fide purchaser for value" in this context. See Doc. No. 800 at 16–18 (citing cases); cf. United States v. 939 Salem St., 917 F. Supp. 2d 151, 158 (D. Mass. 2013) (finding "family member" who "receives property . . . as a gift . . . cannot claim the status of a bona fide purchaser" under civil forfeiture statute with similar language). In addition, Chin's concession that, by the time the Lexus was purchased, she suspected Tam of "dealing drugs" substantially undermines any claim that she

13

had no reason to expect the vehicle might become subject to forfeiture. This knowledge should have rendered it foreseeable to a person in Chin's position: 1) that the funds used to cover most of the Lexus's cost were derived (in whole or in part) from Tam's drug dealing; 2) that Tam might engage in drug dealing on those occasions when he drove the Lexus; or 3) that both of those things might be true. Thus, Chin cannot prevail on the "bona fide purchaser" theory.

In sum, Chin's claim to the Lexus falters at each of at least four gates. The petition is facially deficient, the Court's finding of forfeitability cannot be assailed now, Chin's interest in the Lexus was not vested and superior to Tam's, and she was not a bona fide purchaser for value. The applicable legal standards applied to the undisputed facts therefore compel a finding that the government is entitled to summary judgment, and Chin's claim must be dismissed.[12]

IV. CONCLUSION

For the foregoing reasons, Tam's motion to vacate the forfeiture order (Doc. No. 804) is DENIED, the government's motion for summary judgment (Doc. No. 799) is ALLOWED, and Chin's third-party claim (Doc. No. 660) is DISMISSED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[12] The themes running through both Tam's and Chin's submissions rely less on the law than on equitable principles of what result would be (in their minds) fair. See, e.g., Doc. No. 814 at 4 (highlighting that other vehicles Tam used more often in course of conspiracy were not seized, but the one "LEAST mentioned" by investigators was); Doc. No. 809 at 2–3 (same). But this is a legal, not equitable, matter. Cf. Brown v. United States, 692 F.3d 550, 552–53 (6th Cir. 2012) (describing § 853(n) as creating "adequate remedy at law" for vindicating interest in forfeited property such that third party is "not entitled to equitable relief"). Tam's use of other vehicles not seized is immaterial to the assessment of Chin's legal interest in the Lexus. Though Tam acknowledges (correctly) that his "family . . . ha[s] already suffered more than they should have" as a result of his criminal activity, that is also an equitable consideration beyond the scope of the legal questions presented by Chin's third-party claim. The Court's resolution of the pending motions in the government's favor is not intended to punish Chin or convey disregard for the hardships she has certainly faced because of Tam's crimes. It is simply the result of impartially applying the governing law to the undisputed facts.